UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Capital One, N.A., <br><br> Plaintiff <br><br> v. <br><br> Las Vegas Development Group, LLC, et al, <br><br> Defendants | Case No. 2:15-cv-01436-JAD-PAL <br><br> **Order Granting Motion for Leave to File Surreply and Granting in Part and Denying in Part Motion for Summary Judgment** <br><br> [ECF 29, 36] |

This action[1] challenges the 2013 nonjudicial foreclosure sale of the home located at 3832 Dusty Glen Court in North Las Vegas, Nevada. Capital One claims it is the beneficiary of the senior deed of trust on the home, which the Hidden Canyon HOA sold to Las Vegas Development Group, LLC ("LVDG") at a non-judicial foreclosure sale for a small fraction of the mortgage balance.[2] Under the Nevada Supreme Court's holding in *SFR Investments Pool 1, LLC v. U.S. Bank*,[3] if the HOA properly foreclosed on a superpriority lien under NRS Chapter 116, Capital One's interest was extinguished.

In an effort to save its interest, the Bank sues LVDG to quiet title and for fraudulent transfer.[4] It alleges that the sale was invalid because the homeowners did not receive notice of the sale and the HOA lien improperly identified the foreclosing entity as the Hidden Canyon *HOA*, not the Hidden Canyon *Owners Association*.

LVDG moves for summary judgment in its favor. Because I find that these circumstances do not support a fraudulent-transfer claim, I grant summary judgment on that claim. But because

---

[1] This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332. *See* ECF No. 23 at ¶ 4.

[2] ECF No. 23.

[3] *SFR Inv. Pool 1, LLC v. U.S. Bank*, 334 P.3d 408, 419 (Nev. 2014) (en banc).

[4] ECF No. 37.

genuine issues of fact remain on the question of whether the foreclosing entity had the legal authority to lien the property and conduct the sale, I deny summary judgment on the Bank's quiet-title claim.

**Facts**

**A.     The Swanson property**

The Swansons purchased their home on Dusty Glen Court in 2002, and five years later they obtained a $232,000 mortgage from Chevy Chase Bank, secured by a deed of trust.[5] Attached to the deed of trust is a planned unit development rider that reflects that the property is part of a common-interest community known as Cheyenne Ridge and governed by covenants, codes, and restrictions, bylaws, and other declarations that obligate the Swansons to "promptly pay, when due, all dues and assessments imposed" by those documents.[6]

**B.     The HOA foreclosure sale**

In November 2012, Absolute Collection Services, LLC, ("ACS") recorded a notice of delinquent assessment lien against the Swanson property, representing that the Swansons' financial obligations to the Hidden Canyon HOA were in arrears by nearly $900.[7] A recorded January 2013 document entitled Notice of Default and Election to Sell under Homeowners Association Lien advised that the amount due had increased to $1,538.07 and that a foreclosure sale was imminent if the debt was not paid.[8] ACS recorded a Notice of Trustee's Sale on May 23, 2013, showing the lien amount as $3,238.08;[9] sold the property in a non-judicial foreclosure sale on August 13, 2013, "pursuant to the powers granted to Hidden Canyon HOA"; and

---

[5] ECF No. 23 at ¶ 9; ECF No. 5-1 at 2.

[6] ECF No. 5-1 at 17.

[7] ECF No. 29-3.

[8] ECF No. 29-4.

[9] ECF No. 31-1 at 11.

conveyed the property to LVDG via a trustee's deed upon sale for $11,500.[10]

C.   **HOA liens and non-judicial foreclosure under NRS Chapter 116**

"NRS 116.3116(1) gives an HOA a lien on its homeowners' residences" for unpaid assessments and fines, and NRS 116.3116(2) gives that lien priority over all other liens and encumbrances with limited exceptions.[11] NRS Chapter 116 permits HOAs to enforce those liens through nonjudicial foreclosure.[12]

As the Nevada Supreme Court explained in *SFR*, Nevada's HOA statutory-lien scheme, codified in NRS Chapter 116, "is a creature of the Uniform Common Interest Ownership Act of 1982 . . . (UCIOA), which Nevada adopted in 1991."[13] "NRS 116.3116(2) establishes a true superpriority lien" that is "senior to" a lender's first deed of trust.[14] Proper foreclosure on these liens extinguishes the lien of the senior mortgagee.[15]

D.   **This lawsuit and the motion for summary judgment**

Capital One holds the senior mortgage on this property; it was assigned Chevy Chase's first deed of trust more than a year after the foreclosure sale.[16] It filed this lawsuit in July 2015[17] against LVDG for quiet title and fraudulent transfer, and it names the Hidden Canyon Owners Association nominally. The Bank's quiet title claim hinges on the theory that the first trust deed on the property was not extinguished by the HOA's foreclosure because the Hidden Canyon

---

[10] ECF No. 31-1 at 14.

[11] *SFR*, 334 P.3d at 410.

[12] *See id*. at 411, 414–15 (describing the steps an HOA must take to initiate a Chapter 116 nonjudicial foreclosure); Nev. Rev. Stat. §§ 116.3116(1), 116.31162.

[13] *Id*. at 410 (citing the Uniform Common Interest Ownership Act of 1982, § 3-116, 7 U.L.A., part II 121–24 (2009) (amended 1994, 2008)).

[14] *Id*. at 412–19.

[15] *Id*. at 413 (quoting 1994 & 2008 UCIOA § 3-116 cmt. 1).

[16] ECF No. 5-6.

[17] ECF No. 1.

HOA had no right to lien or foreclose on this property; its fraudulent-transfer claim invokes Nevada's Uniform Fraudulent Transfers Act, NRS Chapter 112, and alleges that the Swansons were insolvent and the sale failed to yield reasonably equivalent value for the property.[18]

LVDG now moves for summary judgment on, or alternatively to dismiss, both claims.[19] LVDG argues that *SFR* is squarely dispositive and leaves no question that the Bank's interest was extinguished by the sale, the recitals in the deed that the sale was lawfully conducted are "conclusive proof" of that fact, and the Bank has no evidence that the sale was improperly conducted. It contends that the Bank's fraudulent-transfer claim is "creative," but nonsense, because NRS Chapter 112 applies only to transfers by debtors, and this property was transferred by the HOA, not by the Swansons.[20]

In its response, the Bank asks to deny or delay summary judgment because discovery was still ongoing, and it argues that Nevada's HOA foreclosure scheme is unconstitutional, the SFR decision is not retroactive so it does not apply to this 2013 sale, and the deed recitals cannot validate this sale when it was conducted by the wrong HOA and the sale price was inadequate.[21] A few weeks later, the Nevada Supreme Court addressed the effect of deed recitals in *Shadow Wood Homeowners Association v. New York Community Bancorp., Inc.*, and the Bank filed an unopposed motion to file a surreply to address *Shadow Wood*'s impact on this discussion.[22] Finding good cause, I grant that motion and consider the surreply in my analysis below.

. . .

---

[18] ECF No. 23.

[19] ECF No. 5.

[20] *Id*.

[21] ECF No. 31.

[22] ECF No. 36.

**Discussion**

**A.     Summary-judgment standards**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[24] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[25]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[26] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[27] The court only considers properly authenticated, admissible evidence in deciding a motion for summary judgment.[28]

. . .

---

[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[24] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[25] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[27] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[28] Fed. R. Civ. P. 56(c); *Orr*, 285 F.3d at 773–74.

**B.    LVDG is entitled to summary judgment on the Bank's fraudulent-transfer claim because NRS Chapter 112 has no application to this HOA foreclosure sale.**

Nevada adopted and codified the Uniform Fraudulent Transfers Act in NRS Chapter 112.[29] That statutory scheme provides that "A transfer made . . . by a debtor is fraudulent as to a creditor whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer" and certain other conditions are present.[30] It also provides that "A transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time . . . ."[31] The Bank's fraudulent-transfer claim is based on the allegations that LVDG's $11,500 bid "was not reasonably equivalent value" and, at the time of the sale, the homeowners were insolvent.[32]

There are two fundamental and fatal problems with the Bank's fraudulent-transfer claim: (1) the homeowners did not make this transfer, the HOA did; and (2) LVDG was not a creditor. The Bank's attempt to fit the square peg of this HOA foreclosure sale into the round hole of Nevada's Fraudulent Transfer Act fails as a matter of fact and law. LVDG is entitled to summary judgment on the bank's fraudulent-transfer claim.

**C.    Issues of fact about the Hidden Canyon HOA's authority to lien and sell the property preclude summary judgment on the Bank's quiet-title claim.**

By its quiet-title claim, the Bank alleges that it "is entitled to a determination that its Deed of Trust remains a valid encumbrance against the Property" because the homeowners did not receive notice of the foreclosure proceedings and the notices improperly identify the HOA as

---

[29] *Herup v. First Boston Fin., LLC*, 162 P.3d 870, 872 (Nev. 2007).

[30] Nev. Rev. Stat. § 112.180(1).

[31] Nev. Rev. Stat. § 112.190(1).

[32] ECF No. 23 at ¶¶32–35. The Bank offers no evidence to support these allegations.

the Hidden Canyon HOA, which is a separate legal entity from the Hidden Canyon Owners Association, which governs this property.[33] LVDG argues that the foreclosure deed states that the foreclosing entity "complied with all requirements of law" and NRS 116.31166(1) deems that recital "conclusive proof" that Chapter 116's notice requirements were satisfied.[34] In its surreply[35] the Bank argues that the Nevada Supreme Court recently invalidated that argument in *Shadow Wood Homeowners Association v. New York Community Bancorp*, where it held that "conclusive proof" does not mean what the HOAs and investors think it means and deed recitals "do not prevent a court from granting equitable relief from an improperly conducted HOA sale."[36]

*Shadow Wood* did not eviscerate the effect of deed recitals or NRS 116.31166; it just made it clear that such recitals do not render the deeds in which they are found "unassailable," and courts must balance all the equities.[37] The Bank's argument that the homeowners (or anyone else) failed to receive notice of the sale carries no weight in my equities-balancing assessment because the Bank provides no admissible evidence to support this lack-of-notice allegation. Although the Bank offers a letter purportedly from the homeowners to Capital One in which the homeowners claim that they had no idea that their home had been foreclosed upon,[38] the letter is not authenticated and its contents are hearsay, so I exercise my discretion to disregard it.[39]

---

[33] *Id.* at ¶¶ 22–25.

[34] ECF No. 29 at 10.

[35] ECF No. 36.

[36] *Id.* at 2 (generally citing to *Shadow Wood*).

[37] *Shadow Wood*, 366 P.3d at 1107, 1114 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities.").

[38] ECF No. 31-4.

[39] *See Orr*, 285 F.3d at 778–79 (discussing methods for authenticating letters on summary judgment). The Bank makes no effort to authenticate ECF Nos. 31-2, 31-3, or 31-5 either, and I decline to consider these exhibits.

The fact that the notice of delinquent assessment lien, notice of default and election to sell, notice of trustee's sale, and trustee's deed upon sale[40] all refer to the Hidden Canyon HOA, however, does warrant my consideration. Because these documents all appear to have been recorded, I may—and do—take judicial notice of them.[41]

I also consider the declaration of Tracy Kinder, who declares that she is the community manager for the Hidden Canyon Homeowners Association and that the Hidden Canyon Homeowners Association "does not govern the Property" at issue in this case and "did not request, conduct, or in any way participate in the foreclosure sale referenced" in the foreclosure documents.[42] The Kinder declaration is particularly troubling when I also consider that the planned unit development rider attached to the deed of trust from the original sale to the Swansons states that "The Property is a part of a planned unit development known as CHEYENNE RIDGE," and it makes no mention of any HOA or identify in any way the Hidden Canyon HOA.[43]

This evidence leaves me with genuine questions of fact trained on the single, material issue of whether the Hidden Canyon HOA—and ACS purporting to conduct the foreclosure sale on its behalf—even had the authority to foreclose on this property. Because the evidentiary record prevents me from concluding as a matter of law that this foreclosure sale was a proper lien foreclosure capable of extinguishing the deed of trust under NRS Chapter 116 and *SFR*, I deny

---

[40] Collectively attached at ECF No. 31-1.

[41] *See, e.g., Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n. 1 (9th Cir. 2004) (citing *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)); Fed. R. Evid. 201.

[42] ECF No. 31-1 at 2. I am unpersuaded by LVDG's argument that Hidden Canyon HOA was merely an abbreviation of the Hidden Canyon Owners Association. "HOA" is commonly understood in the common-interest-community vernacular to be the abbreviation for "homeowners association," so inscribing "Hidden Canyon HOA" on these foreclosure documents suggests that the lien and sale are attributable to the Hidden Canyon Homeowners Association, not the Hidden Canyon Owners Association, and the two are apparently completely different legal entities. *See* Kinder decl. at ECF No. 31-1.

[43] ECF No. 5-1 at 17.

LVDG's motion for summary judgment on the quiet-title claim.[44]

**D.    *SFR* is retroactive.**

Because the *SFR* decision is central to the still-open issues in this case, I find it efficient to take this opportunity to dispose of the Bank's argument that *SFR* has no application to this case because it was decided after the subject foreclosure sale.[45]  *SFR* did not announce a new rule of law, it merely clarified an existing statute.  Indeed, the *SFR* court itself applied its 2014 holding retrospectively to a 2012 foreclosure sale.[46]  And the Nevada Supreme Court has since applied the *SFR* holding in numerous cases that challenged pre-*SFR* foreclosure sales.[47]  Thus, *SFR* applies to this case.

**E.    The Bank's facial due-process challenge fails.**

Finally, I consider the Bank's argument that NRS Chapter 116's nonjudicial-foreclosure scheme violates procedural due process because it does "not require an association to give notice of its sale to lenders and other parties with a recorded interest in a property."[48]  "Instead," the scheme requires "the lender to affirmatively 'opt in' and request such notice," violating due

---

[44] Because I am denying summary judgment on this basis, I do not reach the Bank's arguments about the other deficiencies in the foreclosure process or its FRCP 56(d) argument.

[45] ECF No. 31.

[46] *See SFR*, 334 P.3d at 419 (reversing dismissal of investor's complaint and vacating the order denying its motion to enjoin the Bank's trustee's sale of the property).

[47] *See, e.g., Centeno v. Mortgage Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "The district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").

[48] ECF No. 31 at 7.

process.[49]

The Bank's theory was rejected in *Las Vegas Development Group v. Yfantis*,[50] another HOA-foreclosure challenge in this district. In *Yfantis*, Judge Andrew Gordon carefully evaluated the statutory scheme. He noted that NRS 116.31168 incorporates the notice provisions of NRS 107.090, which expressly requires notice to first-deed-of-trust holders,[51] and he observed that both the majority and the dissenting opinions in *SFR* agreed that "the statutory scheme requires notice to the first deed of trust holder, which is the issue in this case."[52] "The statute therefore does not violate due process because it does not require the first deed of trust holder to 'opt in' to receive notice as [the bank] argues."[53] Thus, Judge Gordon concluded, "[b]ecause the statute, properly interpreted, does not require the first deed of trust holder to opt in to receive notice, there is no due process violation."[54]

I find Judge Gordon's *Yfantis* analysis and conclusion persuasive, and I adopt them here. Should the evidence in this case ultimately show that the correct entity lawfully foreclosed on its super-priority lien, the Bank's due-process arguments will not save its deed of trust from the effects of Chapter 116 and *SFR*.

. . .

---

[49] *Id.*

[50] *Las Vegas Dev. Grp., LLC v. Yfantis*, 2016 WL 1248693 (D. Nev. Mar. 24, 2016).

[51] *Yfantis*, 2016 WL 1248693, at *4–5.

[52] *Id*. at *5 (citing *SFR*, 334 P.3d at 417–18 (majority opinion), 422 (Gibbons, C.J., concurring in part and dissenting in part)).

[53] *Id*.

[54] *Id*. at *6.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that

- Capital One's Motion for Leave to File Surreply to Motion for Summary Judgment **[ECF No. 36] is GRANTED**; and
- Las Vegas Development Group, LLC's Motion for Summary Judgment or, Alternatively, Motion to Dismiss **[ECF NO. 29] is GRANTED as to the Bank's fraudulent-transfer claim, but DENIED as to the Bank's quiet-title claim.**

Dated June 30, 2016

_____
Jennifer A. Dorsey
United States District Judge